**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**REPUBLIC SERVICES OF FLORIDA,
LIMITED PARTNERSHIP, a Delaware
Limited partnership,**

**Plaintiff,**

**v.**                                        Case No.:8:08-cv-118-T-30MAP

**CITY OF BARTOW, FLORIDA, a**          <u>DISPOSITIVE MOTION</u>
**Florida municipal corporation,**

**Defendant.**

_____/

**REPUBLIC SERVICES OF FLORIDA'S MOTION FOR SUMMARY
JUDGMENT, STATEMENT OF UNDISPUTED MATERIAL FACTS,
AND MEMORANDUM OF LAW**

Plaintiff/Counter-Defendant Republic Services of Florida, Limited Partnership

("Republic"), moves for summary judgment. There are no genuine issues of material fact

and Plaintiff/Counter-Defendant is entitled to judgment as a matter of law. In support

thereof, Republic submits this Motion together with the below Statement of Undisputed

Material Facts and Memorandum of Law.

<u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

The following facts are undisputed by the parties (the "Facts"):

1

1. This Court has jurisdiction over the parties and subject matter of this litigation and venue is proper. (City of Bartow's Answer, Affirmative Defenses and Counterclaim ("Answer"), Art. I, ¶ 2-7; Art. III, ¶ 4)[1].

2. In 1992, Construction and Demolition Disposal, Inc. ("CDDI") and Soil Resources, Inc. ("SRI"), filed an action against the City of Bartow ("City") claiming violations of 42 U.S.C. 1983, the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Art. I, § 10 of the United States Constitution, violations of §§ 163.3194, 166.041(3)(c), and 403.7063, Fla. Stat. and for common law breach of contract and estoppel. (Answer, Art. III, ¶ 1).

3. At issue was CDDI/SRI's ability to operate a landfill and the types of waste to be disposed on its property located at 2500 West S.R. 60, Bartow, Florida. (Answer, Art. III, ¶ 2).

4. The parties ultimately resolved the issues raised therein and entered into a Settlement Agreement that was attached to the Final Consent Judgment entered by this Court on September 29, 1994, a true copy of which is attached hereto as Exhibit A. (Answer, Art. III., ¶ 3). In its Final Consent Judgment, this Court retained jurisdiction to enforce the Settlement Agreement. (Final Consent Judgment, ¶ 6).

---

[1] The City's Answer includes three articles, each with separately numbered paragraphs. "Art. I" refers to the Answer, "Art. II" to the affirmative defenses, and "Art. III" to the Counterclaim.

5. Republic is the successor in interest of CDDI/SRI and owner and the property that is at issue in this lawsuit (the "Property") which is governed by the Settlement Agreement. (Answer, Art. III, ¶ 6).

6. The Settlement Agreement is binding on both Republic and the City. (Answer, Art. IV, ¶ a).

7. Republic currently operates a "Class III" landfill on the Property known as the "Cedar Trail Landfill". (Answer, Art. III, ¶ 6). A Class III landfill can accept waste such as "yard trash, construction and demolition debris, processed tires, asbestos, carpet, cardboard, paper, glass, plastic, furniture other than appliances, or other materials approved by the Department that are not expected to produce leachate which poses a threat to public health or the environment." F.A.C. § 62-701.200(14).

8. Republic filed an application with the Florida Department of Environmental Protection ("FDEP") on or about June, 2006, seeking permits to construct and operate a "Class I" solid waste landfill on the Property. (Answer, Art. III, ¶ 7). A Class I landfill can accept certain classes of waste that cannot be disposed of in a Class III landfill, but not hazardous waste or other classes of waste specifically prohibited by law. F.A.C. § 62-701.200(13), 62-701.300. Class I landfills are permitted to accept "garbage," which includes "kitchen and table food waste, and animal or vegetative waste that is attendant with or results from the storage, preparation, cooking, or handling of food materials." F.A.C. § 62-701.200(41).

9. The Settlement Agreement contains the following term:

3

"Hazardous waste, biological or biomedical waste, liquid waste, explosive waste, *household or residential garbage*, toxic waste, and radioactive waste, as the above materials are defined in § 403.703, <u>Florida Statutes</u> in accordance with § 403.703(1), or asbestos permitted under Florida Administrative Code 17-701.340(3)(d), shall not be disposed of within the Property. CDDI/SRI [Republic's predecessor in interest] *is not otherwise limited in its right to landfill those materials presently permitted by FDEP and any other materials which may be permitted by [FDEP] for landfilling not specifically excluded above*." (Settlement Agreement, Art. II, ¶ 1, p. 2, *emphasis added*).

10. The Settlement Agreement contains the following term:

"The parties have considered the facts and have concluded that this Agreement does not accomplish any zoning change or any Comprehensive Plan amendment.

Further, the City has determined that the Agreement is in compliance with the City's Comprehensive Plan, that no amendments thereto are required to effectuate this Agreement, and the Plaintiffs [Republic's predecessors in interest] have relied upon such determination in entering into this Agreement." (Settlement Agreement, Art. VI, ¶ 2, p. 12).

11. The Settlement Agreement contains the following term:

"This Agreement shall not be construed to limit or restrict the nature or duration of activities which are ongoing or may in the future be undertaken on the Property by CDDI/SRI, their successors or assigns, except as expressly provided herein." (Settlement Agreement, Art. I, ¶ 2, p. 1).

12. The Settlement Agreement contains the following term:

"The City agrees that upon entry of the Consent Judgment contemplated by this Agreement, such Judgment will incorporate this Agreement and supersede any statutes, ordinances, or regulations in conflict with or in derogation of this Agreement." (Settlement Agreement, Art. II, ¶ 5, p. 5).

13. The City of Bartow was authorized to enter into the Settlement Agreement by its own City Counsel pursuant to City of Bartow Resolution 3044-R. (Answer, Exhibit A, p. 1).

14. The Final Consent Judgment provides as follows:

4

"To the extent this Order and incorporated Settlement Agreement conflicts with any other City Land Development Regulations, then this Order and Settlement Agreement will control. This order and incorporated Settlement Agreement supersedes (sic) any City statutes, ordinances or land development regulations which conflicts (sic) with or is (sic) in derogation of the provisions herein." (Final Consent Judgment, ¶ 3).

## ARGUMENT

### I.   INTRODUCTION

Both parties in this action seek declaratory relief concerning the interpretation of the Settlement Agreement. Because the interpretation of a written agreement is primarily a legal issue, summary judgment is a particularly appropriate mechanism for resolution. The pleadings disclose two matters at issue in this dispute:

(1) Whether the Settlement Agreement merely prohibits Republic from accepting "household or residential garbage" for disposal on the Property, as its plain language suggests, or whether it also prohibits non-residential garbage; and

(2) Whether Republic's proposed use of the Property in compliance with the Settlement Agreement violates any City ordinances, land use regulations, or zoning requirements.

In the first case, the plain text of the Settlement Agreement clearly and unambiguously prohibits only garbage from households or residences, and does not prohibit other garbage. In the second case, the Settlement Agreement clearly and unambiguously confirms that no city ordinances, land use regulations, or zoning requirements are violated and no additional City approvals are required, provided Republic does not accept the types of waste prohibited by the Settlement Agreement. Because the Settlement

Agreement is clear and unambiguous on these matters, summary judgment should be granted in favor of Republic.

## II.     STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate when there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are deemed material only if a dispute over them might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this case, summary judgment should be granted because there are no material facts in genuine dispute, and Republic is entitled to judgment as a matter of law. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## III.    APPLICABLE LAW

This Court originally had subject matter jurisdiction by the assertion of federal question claims as well as supplemental state law claims. (Facts, ¶ 2). The Court retained jurisdiction to enforce the Settlement Agreement and incorporated the Settlement Agreement in its Final Consent Judgment. *Id.* Pursuant to the terms of the Settlement Agreement, as incorporated in the Final Consent Judgment, the interpretation of the Settlement Agreement is governed by Florida Law. (Settlement Agreement, Art. X, ¶ 4).

## IV.     ISSUES OF LAW RAISED BY THE PLEADINGS

*A.     The Settlement Agreement only prohibits garbage from households and residences, and not other garbage.*

One of the two major issues raised by the pleadings is whether or not the Settlement Agreement prohibits Republic from accepting non-residential garbage for

disposal on the Property. Art. II, ¶ 1 of the Settlement Agreement clearly and unambiguously prohibits "household or residential garbage" from being disposed of on the Property, and clearly and unambiguously states that Republic "*is not otherwise limited* in its right to landfill those materials presently permitted by FDEP and any other materials which may be permitted by [FDEP] for landfilling not specifically excluded above." (Facts, ¶ 9, *emphasis added*). The plain meaning of this language is that garbage from households and residences is prohibited, and other garbage is not. No other meaning or ambiguity is apparent within the four corners of the document.

When the language of a contract is "clear and unambiguous," a court has "no right . . . to give it a meaning other than that expressed in it." Hamilton Const. Co. v. Board of Public Instruction, 65 So. 2d 729, 731 (Fla. 1953). "[T]he language used in [a contract] is the best evidence of the parties' intent. When that language is clear and unambiguous, the courts cannot indulge in construction or interpretation of its plain meaning." Hurt v. Leatherby Ins. Co., 380 So. 2d 432, 433 (Fla. 1980). This concept is very well established.[2]

In a declaratory action regarding interpretation of a contract, to the extent that the agreement is unambiguous, resolution involves only questions of law. "[W]here the

---

[2] "The rule is well established in this state . . . that when competent parties reduce their engagements to writing in terms that create a legal obligation without any uncertainty as to the object or extent of the engagement as between them, it is conclusively presumed that the whole engagement and the extent and manner of their undertaking is contained in the writing. *The writing itself is the evidence of what they meant or intended by signing it. The test of the meaning and intention of the parties is the content of the written document.*" Home Development Co. v. Bursani, 178 So. 2d 113, 117-118 (Fla. 1965), *citing* Gendzier v. Bielecki, 97 So. 2d 604, 608 (Fla. 1957), *emphasis in original. Cf.* Ross v. Savage, 66 Fla. 106, 126 (Fla. 1913); Horne v. J. C. Turner Cypress Lumber Co., 55 Fla. 690, 699 (Fla. 1908); Boat Town U. S. A., Inc. v. Mercury Marine Div. of Brunswick Corp., 364 So. 2d 15, 18 (Fla. 4th DCA 1978); Fecteau v. Southeast Bank, N.A., 585 So. 2d 1005 (Fla. 4th DCA 1991); Fernandez v. Homestar at Miller Cove, Inc., 935 So. 2d 547, 551 (Fla. 3rd DCA 2006).

determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment." <u>Volusia County v. Aberdeen at Ormond Beach,</u> 760 So. 2d 126, 131 (Fla. 2000). Further, a trial is completely unnecessary because any evidence of contrary intent that the City may wish to present at trial would be excluded by operation of the parol evidence rule: "The [parol evidence] rule inhibits the use of parol evidence to contradict, vary, defeat, or modify a complete and unambiguous written instrument, or to change, add to, or subtract from it, or affect its construction." <u>J. M. Montgomery Roofing Co. v. Fred Howland, Inc.,</u> 98 So. 2d 484, 485-486 (Fla. 1957), *citing* 13 Fla.Jur. § 383.

The language of the Settlement Agreement is clear and unambiguous: Republic is prohibited from accepting garbage from households or residences for disposal on the Property. The Settlement Agreement expressly authorizes Republic to accept any other garbage that it obtains a permit from FDEP to accept, including garbage from non-residential sources such as retail, commercial and industrial establishments. Because the Settlement Agreement is clear and unambiguous, Republic is entitled to summary judgment on this issue.

B.      *No ordinance compliance, zoning changes or comprehensive plan amendments are required before the planned landfill can be constructed.*

Notwithstanding the interpretation of the phrase "household or residential garbage," also at issue here is the extent to which Republic's proposed Class I landfill is consistent with local land use and zoning requirements. Because answering this question

8

is simply a matter of reviewing the plain language of the Settlement Agreement, this is a matter of law that is appropriate for resolution by summary judgment. Such a review must conclude that all local ordinance, land use, and zoning requirements have been met and Republic is entitled to declaratory judgment to that effect.

On its terms, the Settlement Agreement provides that, except for those types of waste specifically enumerated, Republic "is not otherwise limited in its right to landfill those materials presently permitted by FDEP and any other materials which may be permitted by [FDEP] for landfilling not specifically excluded above." (Facts, ¶ 7). But for the Settlement Agreement, several local land use requirements might affect Republic's rights in this regard or necessitate City approval of the project. These requirements include regulations set forth in the City of Bartow Comprehensive Plan, the Unified Land Development Code of the City of Bartow §1.03.01; and Code of Ordinances, City of Bartow § 62-4.

However, The Settlement Agreement clearly and unambiguously deems Republic's planned operations to be consistent with these requirements: "[T]he City has determined that the Agreement is in compliance with the City's Comprehensive Plan, that no amendments thereto are required to effectuate this Agreement, and the Plaintiffs [Republic's predecessors in interest] have relied upon such determination in entering into this Agreement." (Facts, ¶ 10). "The City agrees that upon entry of the Consent Judgment contemplated by this Agreement, such Judgment will incorporate this Agreement and supersede any statutes, ordinances, or regulations in conflict with or in derogation of this Agreement." (Facts, ¶ 12). "This Agreement shall not be construed to limit or restrict the

nature or duration of activities which are ongoing or may in the future be undertaken on the Property by CDDI/SRI, their successors or assigns, except as expressly provided herein." (Facts, ¶ 11).

Not only were these provisions agreed-upon by the parties, the Court ratified them and specifically adopted them in the Final Consent Judgment as a finding of the Court: "To the extent this Order and incorporated Settlement Agreement conflicts with any other City Land Development Regulations, then this Order and Settlement Agreement will control. This order and incorporated Settlement Agreement supersedes (sic) any City statutes, ordinances or land development regulations which conflicts (sic) with or is (sic) in derogation of the provisions herein." (Facts,¶ 14). It would appear that the matter of interpretation at issue here has already been conclusively resolved.

Indeed, to remove any and all doubt about the strength, enforceability, or legal effect of the Settlement Agreement, the City Commission of the City of Bartow passed a resolution attached thereto authorizing the City to enter into the Settlement Agreement. (Facts, ¶ 13). This resolution and the Settlement Agreement removed any doubt about whether activities authorized by the Settlement Agreement were in violation of any City requirements in favor of Republic. Provided that Republic obtains a permit from FDEP and limits its activities to those authorized by the Settlement Agreement, no additional City permits or compliance with City regulations is required. There being no genuine issue of material fact on this point, summary judgment on this issue should be granted to Republic.

## V.    REJECTION OF CITY DEFENSES

### A. *First Affirmative Defense: Ambiguity of the Settlement Agreement*

Republic's First Affirmative Defense is as follows:

"The Settlement Agreement prohibits 'household or residential garbage
. . . defined in § 403.703, Florida Statutes.' This and other terms contained
in Section II.1 of the Settlement Agreement, however, are not defined in §
403.703, Fla. Stat. or in FDEP's implementing regulations. As such, the
undefined terms in Section II.1 are ambiguous."

Standing alone, the phrase "household or residential garbage" is clear and
unambiguous. It refers to garbage that comes from households and residences. Had the
parties intended to prohibit all garbage as the City contends, and not merely garbage from
households and residences, they would have simply used the word "garbage" instead of
the phrase "household or residential garbage."

Numerous secondary sources confirm that these terms have a clear and
unambiguous meaning. With respect to the terms "household" and "residential":

"household . . . *n*. those who dwell under the same roof and compose a
family; *also* **:** a social unit composed of those living together in the same
dwelling;  . . . *adj*. **1 :** of or relating to a household" Merriam-Webster's
Collegiate® Dictionary, Eleventh Edition (2003), available at:
http://www.merriam-webster.com/dictionary/household.

"residential . . . *n*. 1 a: used as a residence or by residents b: providing
living accommodations for students <a residential prep school> 2:
restricted to or occupied by residences <a residential neighborhood> 3: of
or relating to residence or residence 4: provided to patients residing in a
facility <residential drug treatment>; also : being a facility providing such
treatment  <a residential treatment center>" *Id.* available at:
http://www.merriam-webster.com/dictionary/residential

"residence . . . *n*. 1 a: the act or fact of dwelling in a place for some time b:
the act or fact of living or regularly staying at or in some place for the
discharge of a duty or the enjoyment of a benefit2 a (1): the place where
one actually lives as distinguished from one's domicile or a place of

temporary sojourn (2): domicile . . . 3 a: a building used as a home : dwelling b: housing or a unit of housing provided for students . . ." *Id.* available at: http://www.merriam-webster.com/dictionary/residence

"household, *adj.* Belonging to the house and family, domestic." Black's Law Dictionary 744 (7th ed. 1999).

"residence . . . 1. The act or fact of living in a given place for some time . . . 2. The place where one actually lives, as distinguished from a domicile . . . 4. A house or other fixed abode; a dwelling" *Id.* at 1310.

"'Household waste' means any solid waste, including garbage, trash, and sanitary waste in septic tanks, *derived from households*, including single and multiple residences, hotels and motels, bunkhouses, ranger stations, crew quarters, campgrounds, picnic grounds, and day-use recreation areas." F.A.C. § 62-701.200(55), *emphasis added.*

"Garbage" is similarly well-defined and unambiguous:

"'Garbage' means all kitchen and table food waste, and animal or vegetative waste that is attendant with or results from the storage, preparation, cooking, or handling of food materials." F.A.C. § 62-701.200(41).

"garbage . . . *n.* 1 a: food waste b: discarded or useless material" Merriam-Webster's Collegiate® Dictionary, Eleventh Edition (2003), available at: http://www.merriam-webster.com/dictionary/garbage.

There is simply no possible controversy or ambiguity over these terms. "Household or residential garbage" is food waste from places where people and families live and dwell. It includes food waste from structures such as single and multiple residences, hotels and motels, bunkhouses, ranger stations, crew quarters, and campgrounds, and does not include waste of any kind from commercial and non-residential structures such as restaurants, office buildings, retail establishments, industrial facilities, medical facilities, and the like.

Because the phrase "household or residential garbage" is not ambiguous, the City's First Affirmative Defense must rest on the idea that, because the Settlement Agreement asserts that "household or residential garbage" is "defined in § 403.703, Florida Statutes", and it is not so defined, an ambiguity is created that supports a different interpretation of the phrase than its plain meaning.

But the manner in which the Settlement Agreement is quoted by the City in its First Affirmative Defense creates the ambiguity – no ambiguity is present in the original. The full provision is as follows:

> "Hazardous waste, biological or biomedical waste, liquid waste, explosive waste, household or residential garbage, toxic waste, and radioactive waste, as the above materials are defined in § 403.703, Florida Statutes in accordance with § 403.703(1), or asbestos permitted under Florida Administrative Code 17-701.340(3)(d), shall not be disposed of within the Property. CDDI/SRI is not otherwise limited in its right to landfill those materials presently permitted by FDEP and any other materials which may be permitted by [FDEP] for landfilling not specifically excluded above." (Facts, ¶ 9).

In this provision, of the nine types of waste that are prohibited, three of them are, in fact, defined in Fla. Stat. § 403.703: hazardous waste, biological waste, and biomedical waste. The remaining six are not. The intent of the parties is plain from the language of the Settlement Agreement: to the extent that these terms are defined by statute, the statutory definitions control. To the extent that they are not, the plain meaning of the words used is controlling. Therefore, there is no ambiguity.

Even assuming that the parties were not so thoughtful in their drafting, the internal inconsistency of this provision is not an "ambiguity" within the meaning of

Florida law. Florida law recognizes several ways of stating the test for whether a contractual ambiguity exists:

> "A word or phrase in a contract is 'ambiguous' only when it is of uncertain meaning, and may be fairly understood in more way than one . . . The term "ambiguous" means susceptible of more than one meaning . . . Language is ambiguous where it is susceptible of interpretation in opposite ways . . .Where either general language or particular words or phrases used in insurance contracts are 'ambiguous,' that is, doubtful as to meaning, or, in the light of other facts, reasonably capable of having more than one meaning so that the one applicable to the contract in question cannot be ascertained without outside aid . . . A contract is ambiguous when it is reasonably or fairly susceptible to different constructions . . ." <u>Friedman v. Virginia Metal Products Corp.</u>, 56 So. 2d 515, 517 (Fla. 1952), *citations and quotations omitted.*

The City's assertion that the inclusion of the phrase "defined in § 403.703, Florida Statutes" creates an ambiguity begs the question: what other meaning besides the plain one is suggested? There is only one possible meaning of the phrase "household or residential garbage." The inclusion of the phrase "defined in § 403.703, Florida Statutes" does not suggest any other meaning whatsoever. Therefore, there is no ambiguity and the First Affirmative Defense is disposed of.

Going even further, even if the phrase "defined in § 403.703, Florida Statutes" did suggest another meaning for the phrase "household or residential garbage" no evidence would be admissible at trial to illuminate what that meaning is. Florida law distinguishes between ambiguities that are "latent" and "patent." *See* <u>Crown Management Corp. v. Goodman</u>, 452 So. 2d 49, 51 (Fla. 2nd DCA 1984)[3]. "Florida courts . . . allow parol

---

[3] The <u>Crown Management Corp.</u> court noted that "The rule differentiating latent and patent ambiguities in respect to admitting parol evidence has been criticized and even discarded in a number of jurisdictions." *Id.* at 52. Notwithstanding, the court found that "we must adhere to the distinction inasmuch as the rule is still in existence." *Id.* The distinction has been noted and followed in recent federal cases interpreting Florida

evidence where there is a latent ambiguity and reject it where there is a patent one." *Id.* at 52.

"[A] patent ambiguity is that which appears on the face of the instrument and arises from the use of defective, obscure, or insensible language. Extrinsic evidence is inadmissible if the ambiguity is patent, because such evidence would, in effect, allow the court to rewrite the contract for the parties by supplying information the parties themselves did not choose to include. A latent ambiguity, on the other hand, is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings. In such instance, this evidence is required because the instrument itself does not provide sufficient insight into the intent of the parties." *Id.* at 52, *citiations omitted.* Accepting, arguendo, that the phrase "defined in § 403.703, Florida Statutes" makes "household or residential garbage" ambiguous, it must be determined whether this ambiguity is latent or patent.

The alleged ambiguity created by the phrase "defined in § 403.703, Florida Statutes" is only potentially troubling because the phrase "household or residential garbage" and its component terms are not, in fact, defined in such statue. The phrase "defined in § 403.703, Florida Statutes" is, if anything, "defective", "obscure" and "insensible." It does not suggest conflicting meanings in certain situations. The alleged defect plainly exists on the face of the document in question, and does not require the

---

law and remains good law in Florida. *See, e.g.* <u>Johnson Enters. of Jacksonville v. Fpl Group</u>, 162 F.3d 1290, 1310 (11th Cir. 1998), Macky Bluffs Dev. Corp. v. Advance Constr. Servs., No. 3:06cv397/MCR/EMT, 2008 U.S. Dist. LEXIS 1294 (N.D. Fla. 2008).

application of any particular circumstances to make the ambiguity appear. Therefore, any ambiguity that exists is patent, and not latent.

Because any alleged ambiguity is patent, parol evidence would be inadmissible at trial to illuminate the intent of the parties.

As described, Summary judgment should be granted in favor of Republic because:

i.    There is no ambiguity in Art. II, ¶ 1 of the Settlement Agreement.

ii.   Even if the phrase "defined in § 403.703, Florida Statutes" is in error, it does not rise to the level of an "ambiguity" because it does not suggest any other meaning for the term "household or residential garbage" than the plain meaning thereof.

iii.  Even if it did, parol evidence would be inadmissible to resolve the alleged ambiguity, and this Court must interpret the provision within the four corners of the document.

B.  *Second Affirmative Defense: Unclean Hands by Breach of the Settlement Agreement*

The City alleges in its Second Affirmative Defense that "Republic is barred from obtaining the relief requested because it has acted in violation of the Settlement Agreement." The defense is titled "Unclean Hands."

Both parties have asked this court for a declaratory judgment with respect to the same language in a contract. This cause of action is set forth in and governed by Ch. 86, Florida Statutes. Pursuant to Fla. Stat. § 86.031, "A contract may be construed either before or after there has been a breach of it." It follows that this Court may perform the

function that both parties have asked it to perform irrespective of whether one of the parties has breached the contract. Breach of the agreement is not a valid ground to deny declaratory relief concerning it.

Furthermore, no factual allegations have been made with respect to how the City alleges that Republic has breached the Settlement Agreement except with respect to the terms of the agreement that are the subject of this litigation. In other words, the only breach alleged is that Republic has taken steps to obtain FDEP permits to accept non-residential garbage[4]. (Answer, Art. III, ¶¶ 7, 14, 15). If Republic prevails and the court agrees with its interpretation of the Settlement Agreement, it will be conclusively resolved that it has not breached the Settlement Agreement. There is no genuine issue of material fact over whether a breach has occurred, only an issue of law as to what conduct the Settlement Agreement prohibits.

Even so, if the City were to prevail on this Affirmative Defense and the court were to dispose of Republic's claim for relief, both parties, not just Republic, have asked this honorable Court to interpret the meaning and effect of the terms of a contract. The matters raised by the City and Republic are the same: (i) whether commercial and other non-residential garbage is allowed to be disposed of on the Property, and (ii) whether any

---

[4] The City has alleged in its Counterclaim that Republic is seeking an FDEP permit to accept "household or residential garbage" on the Property and that this would be a breach of the Agreement. (Answer, Art. III, ¶ 11). While the FDEP permit, standing alone, would permit acceptance of household and residential garbage, nothing in the Settlement Agreement prohibits Republic from designing and constructing a landfill that is an environmentally acceptable location to dispose of a more broad classification of waste than is condoned by a private contractual agreement. Therefore, submission of the permit application alone is not a violation of the Settlement Agreement unless it is coupled with actual acceptance or intent to accept a prohibited class of waste under the Settlement Agreement. Republic does not and has never intended to accept any form of waste prohibited by the Settlement Agreement, including household or residential garbage.

City local ordinances or land use regulations bar the operation of the proposed Landfill. To deny Republic relief would be to deny the City the same relief.

Finally, even though the court is sitting in equity, this action is fundamentally governed by the law of contracts, not equity. A declaratory action does not invoke the principles of equity to the same extent as, for example, an action for unjust enrichment or foreclosure of an equitable lien. In such actions, the conduct of the parties and the relative cleanliness of their hands are absolutely relevant to a determination or who is "right" and who is "wrong." Here, the parties are merely asking this Court to determine the meaning of a contract that they both agree is valid and binding on them. (Facts, ¶ 6). To be equitable, the decision should rest on the simple legal question of what the language means, an issue that is wholly unrelated to whether the Settlement Agreement has been breached. (Indeed, the Court must interpret the contract before it can even be determined if a breach has occurred.) Even if the City were correct in its assertion that Republic has breached the Settlement Agreement, the Court cannot and should not interpret the Settlement Agreement in a manner that is wholly inconsistent with the plain meaning of its terms simply because one party may have breached the contract and the other did not. Equity demands that the contract not be construed against either party, just as they intended. (Settlement Agreement, Art. I, ¶ 3).

C. *Third Affirmative Defense: Estoppel*

As its final affirmative defense, the City asserts that "Republic is estopped from asserting its claim because the claim was previously determined and resolved pursuant to the Settlement Agreement."

This defense is meaningless. The parties both allege in the pleadings that there is a present dispute as to their rights under the Settlement Agreement and have requested the court to interpret that Agreement for them. (Complaint,¶ 27; Answer, Art. III, ¶ 17, 18). In asserting that declaratory relief is appropriate in its own counterclaim, the City has disposed of its own argument that Republic is not entitled to it.

## VI.    RELIEF REQUESTED BY REPUBLIC

Pursuant to the principles set forth above, Republic requests an order of summary judgment:

1. Declaring that all disputes between Republic and the City over the landfill on the Property are controlled by the terms of the Final Consent Judgment and Settlement Agreement;

2. Declaring that the Final Consent Judgment and Settlement Agreement allow Republic to construct and operate a Class I landfill so long as Republic does not allow for the disposal of waste specifically prohibited in the Settlement Agreement and otherwise complies with the terms of any permits issued by FDEP, without any further action required by Republic or Bartow;

3. Declaring that the Judgment and Settlement Agreement does not exclude any garbage from being disposed of on the property unless such garbage is "household or residential garbage." For the purposes of the Settlement Agreement, "household or residential garbage" means food waste from structures that are used as dwelling places by family units, including single and multiple residences, hotels and motels, bunkhouses, ranger stations, crew

quarters, and campgrounds, but not including, for example, restaurants, office buildings, retail establishments, commercial facilities, industrial facilities or medical facilities.

4. Declaring that if the City interferes with the rights of Republic to construct and operate a Class I landfill on the Property in accordance with any permits ultimately issued by FDEP, it will be in further breach of the Settlement Agreement and Republic will be entitled to damages and other appropriate relief, such as injunctive relief, that would prohibit the City from continuing to interfere with Republic's rights;

5. Awarding Republic reasonable attorney's fees and costs incurred in bringing this action; and

6. Awarding Republic such other relief as this Court deems just, equitable, and proper.

**CLARK, CAMPBELL & MAWHINNEY, P.A.**

By: _____

**J. KEMP BRINSON, ESQUIRE**
Florida Bar Number: 752541
kbrinson@ccmattorneys.com
**RONALD L. CLARK, ESQUIRE**
Florida Bar Number: 205192
rclark@ccmattorneys.com
**MATTHEW R. CLARK, ESQUIRE**
Florida Bar Number: 18087
mclark@ccmattorneys.com
500 South Florida Avenue, Suite 800
Lakeland, Florida 33801
Telephone: (863) 647-5337
Litigation Dept. Facsimile: (863) 904-1293

and

**JUNG & SISCO, P.A.**
William F. Jung
Florida Bar No: 380040
100 South Ashley Drive
Suite 1240, Wachovia Center
Tampa, Florida 33602
Telephone: (813) 225-1988
Facsimile: (813) 225-1392

Trial Counsel for Plaintiff,
Republic Services of Florida Limited Partnership

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 23, 2008, I electronically filed the foregoing Document with the Clerk of this Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all parties who are CM/ECF participants.

J. KEMP BRINSON, ESQUIRE
Florida Bar Number: 752541

21

RESOLUTION NO.  3044-R

A RESOLUTION AUTHORIZING THE CITY OF
BARTOW TO ENTER INTO A SETTLEMENT A-
GREEMENT AND GENERAL RELEASE REGAR-
DING THE LAWSUIT CAPTIONED AS CON-
STRUCTION & DEMOLITION DISPOSAL, INC.
AND SOIL RESOURCES, INC., V. CITY OF
BARTOW, CASE.: 92-1016-CIV-T-15A, UNITED
STATES DISTRICT COURT, MIDDLE DISTRICT
OF FLORIDA.

```
DEPT 115   101.00
DEPT 291    13.00
DEPT 128    26.00
CHECKS  140.00
    9533A
```

12/14/94

3472
POLK OFF.REC.
1945
PAGE

BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF

BARTOW, FLORIDA:

   1.     That the City of Bartow is hereby authorized to enter into a settlement

agreement and general release regarding the lawsuit captioned as Construction and

Demolition Disposal, Inc., and Soil Resources, Inc. V. City of Bartow, Case. 92-1016-

CIV-T-15A, United States District Court, Middle District of Florida, a copy of which

agreement is attached hereto as Exhibit "A", and the appropriate municipal officers are

hereby authorized to execute said agreement on behalf of the City of Bartow.

   PASSED   September 19, 1994

CITY OF BARTOW

By _Reynold Floyd_
           Mayor

ATTEST WITH SEAL:

By _Victoria L. Troy_
   Certified Municipal Clerk

Exhibit **A**

THIS INSTRUMENT WAS PREPARED BY

_Fowler, White, Gillen, Boggs, Villareal, Banker, P.A._

_P.O. Box 1438_
_Tampa FL 33601_

ORIGINAL

POLK OFF.REC.   PAGE   3472   1946

## SETTLEMENT AGREEMENT

THIS AGREEMENT is entered into by and between CONSTRUCTION & DEMOLITION DISPOSAL, INC. ("CDDI"), a Florida corporation, SOIL RESOURCES, INC. ("SRI"), a Florida corporation, and the CITY OF BARTOW ("City"), a political entity incorporated within the State of Florida. CDDI, SRI and the City are collectively referred to as the "Parties."

NOW, THEREFORE, in consideration of the mutual promises, representations, warranties, understandings, and agreements contained herein, and for other good and valued consideration, the sufficiency and receipt of which is hereby acknowledged, the Parties, intending to be legally bound, do undertake, promise, and agree for themselves their successors and assigns, as follows:

I.  GENERAL TERMS:

1.  The real property (the "Property") upon which CDDI/SRI will operate their landfill and recycling operations and activities incidental or complementary thereto on nonmandatory lands, unless otherwise expressly limited hereunder, includes that property annexed into the City on June 18, 1973, pursuant to Ordinance No. 988-A (except the Highland Lakes Estates, plat book 61 page 7), and is legally described as Exhibit "A" hereto.

2.  The purpose of this Agreement is to resolve all disputed claims between the Parties in the litigation pending in the United States District Court for the Middle District of Florida in the case styled Construction & Demolition Disposal, Inc. and Soil Resources, Inc. v. City of Bartow, Case No. 92-1016-CIV-25A; and to ensure that CDDI/SRI and their successors and assigns can now and in the future operate landfill and recycling operations

ORIGINAL

ORIGINAL

POLK OFF.REC.   3472
PAGE   1947

and activities incidental or complementary thereto on the Property in a manner consistent with the general health, safety and welfare of the citizens of the City. This Agreement shall not be construed to limit or restrict the nature or duration of activities which are ongoing or may in the future be undertaken on the Property by CDDI/SRI, their successors or assigns, except as expressly provided herein.

3.   Both the City and CDDI/SRI shall be deemed to have participated generally in drafting this Agreement. Accordingly, this Agreement shall be construed neutrally without regard to the Party or Parties responsible for its preparation, and any terms, conditions, uncertainty, or ambiguity shall not be construed against any of the Parties.

4.   This Agreement shall be legally binding between the City and any person or entity to whom the Property is sold or otherwise conveyed and any such conveyance shall be subject to this Agreement.

II.   LANDFILL OPERATIONS:

1.   Hazardous waste, biological or biomedical waste, liquid waste, explosive waste, household or residential garbage, toxic waste, and radioactive waste, as the above materials are defined in §403.703, Florida Statutes in accordance with §403.703(1), or asbestos permitted under Florida Administrative Code 17-701.340(3)(d), shall not be disposed of within the Property. CDDI/SRI is not otherwise limited in its right to landfill those materials presently permitted by FDEP and any other materials which may be permitted by Florida Department of Environmental Protection ("FDEP") for landfilling not specifically excluded above. Additionally, CDDI/SRI agree that they will not seek any permit from the FDEP to erect any structure for the purpose of incineration, burning, and

2

ORIGINAL

POLK OFF.REC.   PAGE

3472 · 1948

recycling within 2000 feet of the Highland Lakes Estates, plat book 61, page 7 ("Highland Lakes Subdivision").

2.    CDDI/SRI shall provide the Bartow Director of Public Services with a copy of all permit applications including blue prints and studies submitted with such permit applications, including any correspondence (both to and from) between CDDI/SRI and FDEP.  If CDDI/SRI seeks any future modification of any existing permit on file with FDEP or any new permits at or after the time that all conditions precedent to this Agreement have occurred, CDDI/SRI shall provide the Bartow Director of Public Services notice of such an intent at least forty-five (45) days prior to submission to FDEP and provide a copy of any document submitted to FDEP at the time of submission.

3.    A 500 foot setback area is established adjacent to the northern and western boundaries of the Highland Lakes Subdivision plat recorded in Plat Book 61 Page 7 as a corridor wherein no solid waste landfilling, recycling, or other continuous commercial activity will ever occur.

4.    CDDI/SRI shall be subject to, and provide evidence of, all relevant state and federal permits governing the activities described herein, and shall be appropriately buffered from existing or future adjacent residential development as described below:

(a)    CDDI shall maintain three rows of red cedars and two rows of slash pines along the north and west sides of the Highland Lakes Subdivision.  The plantings described above are an appropriate buffer for all existing or future adjacent residential development.  The trees and the remaining portion of the berm constructed along E.F. Griffin Road are proper screening and are

3

ORIGINAL

ORIGINAL

POLK OFF.REC.   PAGE

3472   1949

approved and permitted to remain by the City.

(b) Until such time as all trees have reached an average height of 15 feet, there shall be no new FDEP permitted solid waste landfilling within 1000 feet of the Highland Lakes Subdivision except as currently operating, with one exception: if the trees fail to reach an average height of 15 feet because they are poisoned, maliciously cut, or destroyed by persons other than employees of CDDI/SRI or destroyed by acts of God, or other causes not the fault of CDDI/SRI, any dead or damaged trees shall be replanted by CDDI/SRI but landfilling otherwise permitted by this Agreement will, after that replanting, be allowed to commence on January 1, 1998.

(c) When the trees have reached an average 15 foot height or by January 1, 1998, whichever is earlier, the east sides of Phases 6 and 7 and the south side of Phase 10 on the Drawing filed and recorded on May 6, 1992, O.R. Book 3097, Page 0327, Polk County, shall be completed first at a 3:1 slope as permitted by FDEP, and the slopes shall be planted with grass as it is filled.

(d) The City reserves the right to impose reasonable planting buffering restrictions on the Property to the extent that future landfill operations approach other residential developments within the City of Bartow not addressed in this Settlement Agreement.

5. The City agrees that this Agreement does not abrogate its police powers nor does it create any supervisory rights or regulatory authority that is not otherwise expressly conferred in this Agreement. All Parties agree that this document does not constitute an

4

ORIGINAL

ORIGINAL

POLK OFFREC.   3472   1950
PAGE

admission or waiver of any disputed factual or legal issue in the referenced litigation, but rather resolves all such disputes between the Parties in accordance with the provisions of this Agreement. The City agrees that upon entry of the Consent Judgment contemplated by this Agreement, such judgment will incorporate this Agreement and supersede any statutes, ordinances, or regulations in conflict with or in derogation of this Agreement.

6. The total weight and maximum height of the Facility shall not exceed FDEP standards as applied to the Property based upon geotechnical and hydrogeological features of the Property. However, the maximum height in any one area within one thousand feet of the Highland Lakes Subdivision may not exceed 35 feet above the estimated original pre-mined grade. This Agreement does not otherwise restrict the City from exercising any rights it may have in any FDEP administrative proceeding.

7. Once all conditions precedent to the Agreement have occurred, CDDI/SRI shall then immediately instruct tractor trailer operators to discontinue use of Lyle Parkway and use only E.F. Griffin Road for ingress and egress. Within fourteen days of all conditions precedent to the Agreement having occurred, CDDI/SRI shall inset its commercial entrance gate at 1881 E.F. Griffin Road entrance (the "E.F. Griffin Road Entrance") to a point approximately 300 feet inside the property line to allow the "stacking" of trucks before the gate is open. Within ninety days of all conditions precedent to the Agreement having occurred, the "stacking area" from the gate to E.F. Griffin Road shall be paved by the City. CDDI/SRI shall notify its customers of this available "stacking" area.

8. CDDI/SRI shall open a Highway 60 entrance to its facility to accommodate north, east, and westbound traffic within 15 months of the occurrence of all conditions precedent

5

ORIGINAL

to this Agreement.  If the entrance to Highway 60 is not obtained within 15 months, CDDI/SRI will be in breach of this Agreement unless factors beyond CDDI/SRI's control prevent access from being obtained.  The City shall commit equipment and man power in the construction of the Highway 60 access road.  The City shall provide its best efforts to CDDI/SRI in their obtaining permanent access from Highway 60 to the subject property in order to designate that entrance as a primary entrance.

9.  When the Highway 60 entrance is opened, CDDI/SRI shall notify all customers that only southbound traffic will enter through the E.F. Griffin Road Entrance and that the Highway 60 entrance is the primary entrance.  CDDI/SRI will then install a "No Right Turn" sign adjacent to its stop sign at the E.F. Griffin Road Entrance to encourage commercial traffic not to use either E.F. Griffin Road south of the E.F. Griffin Road Entrance or Lyle Parkway.

10.  After the Highway 60 entrance is opened, all trucks will be "stacked" at the Highway 60 primary entrance.  No "stacking" of the trucks will then be permitted on the Property at the E. F. Griffin Road Entrance.

11. For commercial use and other business delivery, the E.F. Griffin Road Entrance shall be open from 7:30 a.m. until 5:00 p.m. five (5) days per week, Monday through Friday.  However, until the Highway 60 entrance is opened or 15 months from the occurrence of all conditions precedent, whichever occurs earlier, the City of Lakeland shall be permitted to use the E. F. Griffin Road Entrance until 7:00 p.m. each Wednesday. In addition, municipal customers, not including any subcontractors or contractors, and CDDI/SRI and employee vehicles will be allowed to utilize that entrance on Saturdays

6

ORIGINAL

ORIGINAL

3472   POLK OFF.REC.   1952   PAGE

during the same hours of operation for business purposes.   However, municipal customers may not use the E. F. Griffin Road Entrance on Saturdays once the Highway 60 Entrance is opened.  No solid waste landfilling shall be conducted at any time within 1,000 feet of the Highlands Lakes Subdivision between 7:00 p.m. and 7:30 a.m. Monday through Friday and from 7:00 p.m. Friday until 7:30 a.m. Monday.   Commercial entries shall be allowed at Highway 60 entrance at any time, unless otherwise limited by the FDEP.

12.  In the event that a natural disaster or state of emergency is declared by the State of Florida or by any governmental official accompanied by a specific request upon CDDI/SRI to operate beyond operational restrictions contained herein, such restrictions shall be lifted for a period of thirty (30) days from the date of such request.  If additional or other emergency relief is warranted from the provisions of this Agreement, CDDI/SRI may petition the City of Bartow City Commission for such relief.

13.  CDDI/SRI agrees not to allow its employees to utilize the Village Road (formerly designated Boardman Road North), South Boardman Drive (formerly Boardman Road South) and Highland Boulevard (formerly Eleanor Boulevard) within the Highland Lakes Subdivision for any business purpose except to allow CDDI/SRI employees to access security structures located on the Property.

III.  LANDFILL INSPECTION PLAN

1.  To augment and supplement the FDEP responsibility to ensure compliance by CDDI/SRI with State statutory and regulatory requirements, the following inspection plan is agreed to by the parties.

2. The City may place at its expense a field inspector on site during operating hours

7

ORIGINAL

ORIGINAL

who may review facility operating records to confirm compliance with operating permit and, in accordance with paragraph III(1), to visually inspect wherever disposal is being conducted to observe the waste materials to confirm the absence of nonregulated material. The City Manager shall, upon request, promptly provide a copy of the written report, if any, to any person. A copy of any and all written reports shall promptly be provided to CDDI/SRI.

3. Pursuant to this Agreement, the City will monitor the CDDI/SRI landfill operation. Pursuant to CDDI/SRI's Class III landfill permit, CDDI/SRI is required to analyze groundwater samples for monitoring wells MW-1 through MW-5 as required by the permit. Pursuant to this Agreement, the City will monitor wells MW-7 and MW-8, which will then be sampled and analyzed on a semi-annual basis in addition to FDEP's monitoring requirements as specified in the Class III permit. Such sampling will be scheduled reasonably in advance with CDDI/SRI. The City shall bear the costs for this monitoring and sampling. CDDI/SRI shall be provided a portion of any sample from these wells upon request and may conduct testing of its own at its own expense. These wells will be analyzed for the parameters attached to the Class III permit condition number 18. Additionally, the monitoring wells heretofore installed at the request of the City shall be maintained by the City at its expense. Any closure costs associated with these wells shall be paid by the City. If CDDI/SRI wishes to conduct landfilling or other site development in the area where MW-7 or MW-8 is located, reasonable notice of not less than 90 days shall be given to the City to allow ERM-South, Inc., or any other State certified ground-water consultant of the City's choosing, to relocate those wells to any area designated by

8

ORIGINAL

ORIGINAL

the City or its agent, and reasonably agreed to by CDDI/SRI. Such wells shall be relocated no later than 90 days from the receipt of such notice. At CDDI/SRI's request, MW-7 and MW-8 shall be relocated into the plantings area contained within the 500 foot setback area adjacent to the northern and western boundaries of the Highland Lakes Subdivision. Any cost associated with the relocation of either well shall be borne two-thirds by the City and one-third by CDDI/SRI.

4. If during the annual sampling event of monitoring wells MW-1 through MW-5, as required by the permit, any analyte exceeds the background concentration, FDEP allows a resampling of wells for those parameters which were exceeded. If the background concentration is exceeded, and FDEP orders resampling, CDDI/SRI will notify the independent environmental firm of ERM-South, or any other state-certified ground-water consultant of the City's choosing, which will then sample monitoring wells MW-7 and MW-8 and analyze for those parameters whose concentrations exceeded background or maximum contaminant levels. Should any of the Minimum Criteria for Ground Water Quality consistent with the permit requirements and as specified in F.A.C. Chapter 17-520 and Chapter 17-522 be exceeded at any well, CDDI/SRI, ERM-South, or any other state-certified ground-water consultant of the City's choosing, shall immediately, upon confirmation of the results, notify the FDEP.

5. Any requirements with respect to monitoring wells, management escrow accounts, long-term care or closure not specifically addressed in this Agreement shall only be governed by applicable State and Federal regulations.

IV. BOUNDARIES:

ORIGINAL

ORIGINAL

3472   1955
POLK OFF.REC.   PAGE

1.  CDDI/SRI may erect a wooden fence between approximately five and six feet tall along the north and west side of the Highland Lakes Subdivision, excluding the noncommercial gate entrances. At the northwest corner of the Highland Lakes Subdivision, CDDI/SRI may erect a wooden fence around the extension of the artificial "lake" as shown on the plat of Florida Village. This fence may be erected at the approximate elevation of the land that adjoins the plat line of the north and west boundaries of Highland Lakes Subdivision. The existing barbed wire fence, at the option of CDDI/SRI, may be moved to an appropriate point within the buffering plantings. CDDI/SRI shall also be permitted to erect a fence along the southern boundary of the Highland Lakes Subdivision and its property. The fence along the southern boundary will provide the City access to its sewage pumping station located outside the southeast corner of the Highland Lakes Subdivision. Any wooden fence adjacent and running with Village Road and Highland Boulevard with the Highland Lakes Subdivision may be offset approximately 10 feet or more inside the CDDI/SRI Property. Any fencing within the Property interior which has been or may be constructed for agricultural uses may be of any type or design associated with such uses and need not be urban in character.

2.  Prior to the paving of the "stacking area" from the gate to E. F. Griffin Road, the City shall construct at its expense an adequate water line north along E.F. Griffin Road to the CDDI/SRI entrance at the E. F. Griffin Road Entrance and set one fire hydrant on the north side of the entrance and set up one fire hydrant at the northeast corner of the property at the berm along E.F. Griffin Road. The City shall also construct water lines and fire hydrants to the service entrance points located at Village Road, South Boardman

ORIGINAL

ORIGINAL

POLK OFF.REC.   3472
PAGE   1956

Drive, and Highland Boulevard.  CDDI/SRI will provide any easements on its Property to the City that are necessary to meet the requirements in this paragraph.  If reasonably accessible, the City will permit CDDI/SRI to utilize its water and sewer services for which CDDI/SRI will pay for all reasonable costs for installation, delivery, utilization and/or consumption.  Any dwelling unit set up on the Property may utilize wells or septic tanks, subject to standard permitting.

### V.  PROPERTY CONSIDERATIONS:

Upon execution and  the occurrence of all conditions precedent to this Agreement, CDDI will offer to quitclaim an undivided interest in the "Lake" and the "Park" (legal descriptions attached as Exhibit "B") to either the Highland Lakes Homeowners' Association or any contiguous lot owner within Highland Lakes Subdivision should either desire to receive such property.  The Highland Lakes Homeowner's Association shall have the right of first refusal for either the "Lake" or the "Park," or any portion thereof. Should the Highland Lakes Homeowner's Association choose not to accept said quitclaim deed to either the "Lake" or the "Park" or any portion thereof, then CDDI will quitclaim deed an undivided interest in that property or any portion thereof to those interested homeowners whose property is contiguous (Exhibit "B").  There will be no cost for the deeded interest; however, the grantee(s) will bear any and all costs attributable to the quitclaim deed, documentary stamps, and the recording thereof.  As provided above, CDDI shall also quitclaim an undivided interest in the extension of the "Lake" to a point approximately six inches away from the proposed wooden fence ("the Lake Extension Area").  The "Lake Extension Area" lies within the Property.  Because the "Lake Extension

11

ORIGINAL

ORIGINAL

3472  1957
POLK OFF.REC.  PAGE

Area" and the proposed fence have not been surveyed, CDDI reserves the absolute right to configure and describe the "Lake Extension Area" to be conveyed.  CDDI will require the following restrictions as covenants that run with the Land.  The owner[s] of the "Lake Extension Area" may not clear the area between the shoreline and fence of bushes and trees.

### VI.  CONDITIONS PRECEDENT TO ENFORCEABILITY:

1.  This Agreement will become effective, and the Parties obligated thereby after the following conditions are met:  (1) the Agreement has been adopted by majority vote of the City Commission, at an advertised public hearing, through a resolution; (2) the entry of a Consent Judgment by the United States District Court in Case No. 92-1016-CIV-T-25A, which recognizes that the settlement constitutes a balancing of competing interests between the Parties as provided in   Exhibit "C", attached hereto and made a part of this Agreement.

2.   While the parties agree that hearings will be necessary to effectuate the conditions precedent, this Agreement does not purport to bind the City to fulfillment of the above specified conditions precedent.  The parties have considered the facts and have concluded that this Agreement does not accomplish any zoning change or any Comprehensive Plan amendment.   Further the City has determined that the Agreement is in compliance with the City's Comprehensive Plan, that no amendments thereto are required to effectuate this Agreement, and the Plaintiffs have relied upon such determination in entering into this Agreement.  The Parties agree that all litigation should be stayed in the pending court matter for sixty (60) days from the date that this Agreement

12

ORIGINAL

ORIGINAL

is passed by resolution by the City Commission so as to allow the conditions precedent to occur. In the event that any or all of the specific conditions precedent are not met within sixty (60) days from the date this Agreement is adopted by resolution, the Agreement shall have no force and effect and the litigation may resume immediately.

3. Within thirty-five (35) days after the occurrence of all conditions precedent to this Agreement, CDDI/SRI shall dismiss with prejudice the lawsuit captioned Construction & Demolition Disposal, Inc. and Soil Resources, Inc. v. City of Bartow, Case No. 92-1016-CIV-T-15A, United States District Court, Middle District of Florida and the Parties shall withdraw all pleadings seeking damages, sanctions, attorneys' fees and costs, or any other relief. All parties shall bear their own attorneys' fees and costs.

VII. FUTURE BUSINESS RELATIONS:

1. In consideration of this Agreement, the statutory requirement that local governments should use the most cost-effective means and contract with private persons for solid waste disposal, §403.7063, Florida Statutes, the City's Solid Waste Comprehensive Plan Element requiring the City to use the most cost effective and ecologically sound manner of disposal, the City and CDDI/SRI hereby enter into a business contract for the disposal of City waste materials.

2. The City agrees to deposit a minimum of 7000 tons per year at the Property. Until September 30, 1995, the base rate paid will be $21.00 a ton (67 percent of the current Polk County standard MSW tipping fee). However, starting October 1, 1994, or contemporaneous with the effective date of any change in the Polk County (or its assigns) standard MSW tipping fee, instead of charging the base rate CDDI/SRI may charge the

13

ORIGINAL

ORIGINAL

lesser of either of the following:  (1) 67 percent of the announced standard MSW tipping fee of Polk County or its assigns; or (2) 67 percent of the average (calculated at the time of the new Polk County effective date) of the standard MSW tipping fees for each county in the FDEP Southwest District.  These terms are fixed, and the duration of the business contract shall run for a period of ten years commencing from the date all conditions precedent to the Settlement Agreement have occurred.  The actual amount charged is hereinafter referred to as the "Standard Rate."

3.  The tonnage subject to this Agreement in paragraph 2 shall consist of City generated or contracted construction and demolition debris from City owned property, City residential yard trash, and junk derived from the maintenance of City streets and alleyways.  CDDI/SRI reserve the right to reject any materials that are prohibited under the terms of this Agreement or pursuant to state or federal laws or regulations.

4.  For any solid waste delivered to the Property in excess of 14000 tons or for any solid waste delivered not described in paragraph 3 above, CDDI/SRI and the City will negotiate reasonable rates and terms of payment for disposal.

5.  At the end of each month, the City shall remit equal monthly payments to CDDI/SRI for the average monthly amount of allowable tonnage expected to be delivered under this Agreement (approximately 583 tons), at the Standard Rate.  At the end of the fiscal year, the City will pay CDDI/SRI for any amount delivered in excess of 7000 tons and up to 14,000 tons at the Standard Rate.

VIII.  MUTUAL GENERAL RELEASE OF ALL CLAIMS

By this Agreement, the Parties for themselves, their heirs, successors, officers,

14

ORIGINAL

ORIGINAL

POLK OFF.REC.   3472.   1960
PAGE

employees, and assigns, each unconditionally releases and forever discharges the other from any and all claims, demands, damages, actions or causes of action, of any nature asserted or which could have been asserted each against the other, ("Claims") including claims, demands, damages, actions or causes of actions, of any nature against the Property or Property interest of the other, and all claims or demands whatsoever in law or equity in the other, and all claims or demands whatsoever in law or equity in which they or their heirs, successors, officers, employees, and assigns shall or may have against each other of the other's Property or Property interest by reason of any matter, cause, or thing existing prior to the date of all conditions precedent having occurred. It is understood and agreed that this Agreement embodies a full and final release of all claims of every nature and kind whatsoever between the Parties and releases claims that are known and unknown, suspected and unsuspected. In particular, without limiting the generality of the foregoing, the undersigned expressly agree and understand that this release is intended to include the release and discharge of the Parties from all claims made or which could have been made the subject of the lawsuit captioned as <u>Construction & Demolition Disposal, Inc. and Soil Resources, Inc. v. City of Bartow</u>, Case No.: 92-1016-CIV-T-15A, United States District Court, Middle District of Florida. This settlement is a compromise of disputed claims and liability is expressly denied. This release, however, does not discharge any obligation or liability resulting from an obligation, default or breach of this Agreement. Further, since the other promises, covenants, representations, understandings and agreements contained within this Agreement constitute the consideration for this release, notwithstanding anything to the contrary in this Agreement, this release shall be void as to and of no benefit

15

ORIGINAL

ORIGINAL

to a Party who breaches this Agreement and the aggrieved Party may assert any Claims released herein against the Party who breaches this Agreement. This release will remain in full force and effect as to the Party who does not breach this Agreement.

### IX. JURISDICTION, ATTORNEYS' FEES AND COSTS

The parties specifically agree to allow the United States District Court for the Middle District of Florida to retain jurisdiction to enforce any part of this Agreement. In the event of any breach of this Agreement, or if it becomes necessary to enforce this Agreement through injunctive relief, the prevailing party's attorneys' fees and costs will be paid by the other party.

### X. MISCELLANEOUS

1. <u>Entire Agreement:</u> (a) It is understood that this Agreement contains the entire agreement between the Parties and supersedes all prior provisions of any agreements or understandings between the Parties that are inconsistent with the obligations to be performed under this Agreement. (b) The Agreement is written and negotiated by both parties to protect their respective interests. Furthermore, drafts of this Agreement and any other aspects of the settlement negotiations generally are inadmissible in evidence, and may not be used for any purpose other than settlement negotiations. In the event a court order requires use or production of any such documents or evidence of such negotiations, reasonable prior notice of such use shall be given to all Parties. Finally, the executed Agreement is inadmissible in evidence until all conditions precedent have occurred, and will not be disclosed, provided, or offered for any purpose in any court, except as required by court order, or pursuant to Rule 408 of the Federal Rules of Evidence.

16

ORIGINAL

ORIGINAL

2. Binding Effect:  All of the provisions, agreements, easements, rights, powers, covenants and obligations contained in this Agreement shall be binding upon the Parties, their respective heirs, successors (by merger, consolidation or otherwise), assigns, devisees, administrators, representatives, lessees, sub-lessees and all other persons or entities acquiring any portion of, or any interest in, the Property, whether by operation of law or in any manner whatsoever, and shall inure to the benefit of the Parties and their respective heirs, representatives, successors (by merger, consolidation or otherwise) and assigns.  All of the provisions, agreements, easements, rights, powers, covenants, conditions and obligations in this Agreement shall constitute covenants running with the land and shall be enforceable against both the covenantor and the land of the covenantor within the Property (or the interest of the covenantor therein) pursuant to Florida law.  Notwithstanding anything to the contrary in this Agreement, CDDI/SRI shall be relieved of any obligations and shall have no further obligations under this Agreement as to the Property if it sells, assigns, transfers or otherwise disposes of all of its interest in the Property.

3. Modification:  Once adopted, it is understood that this Agreement is intended as a full and final settlement of this action.  Unless otherwise provided herein, this Agreement may only be altered, amended or modified by a writing agreed to and signed by CDDI/SRI and adopted by resolution of the Bartow City Commission.

4. Applicable Law:  This Agreement shall be construed according to the laws of the State of Florida.

5. Severability:  If any part of this Agreement shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect or impair any other

17

ORIGINAL

ORIGINAL

provision hereof and the remaining provisions of this Agreement shall remain in effect. However, if for any reason the Consent Judgment or any part contained therein is vacated, this Agreement shall be null and void in its entirety and the Parties shall be restored to their legal status in the case prior to the adoption of the Agreement by resolution of the City Commission.

6.   Duplicate Originals:   This Agreement may be executed in any number of originals, all of which evidence one agreement, and only of which one need be produced for any purpose.

7. Recordation: This Agreement and the covenants and conditions contained herein shall run with the land and shall bind, and the benefit shall inure to, respectively, CDDI/SRI, and their respective successors and assigns.   CDDI/SRI shall record at its expense this Agreement in the public records of Polk County and shall provide a certified copy of the recorded Agreement to the City within fifteen (15) days of all conditions precedent having occurred.

8.   Certification of Understanding and Voluntary Execution:   The Parties and/or their authorized representatives each certify that they have read and understand the terms and conditions of this Agreement and that it is voluntarily executed for the purposes of making a full and final settlement of any and all claims, disputes or otherwise, which could have been asserted against the other Party. The Parties have urged each other to consult independent counsel regarding this release, and each party has done so.

9. Certification of Authorization: The undersigned Parties certify that they are duly authorized to execute and enter into this Settlement Agreement as agent for the Parties

18

ORIGINAL



designated.

10.  <u>Date of Execution</u>:  Upon passage of this Agreement as a resolution by a majority vote of the Bartow City Commission, the President of CDDI, the President of SRI and the Bartow City Manager shall execute the Agreement on behalf of those entities. However, the date of execution of this Agreement shall be the date that all conditions precedent contained in VI, paragraph 1 have occurred.  After approval of the Resolution by the City Commission as described above, the City Attorney will endorse the Settlement Agreement approving it as to form and correctness.

IN WITNESS WHEREOF, we hereby sign this Agreement.

POLK OFF.REC.  PAGE    3472  1964

WITNESS  Barbara M. Gracy

WITNESS  Raymond B. Phillips

J. Michael Ellsworth

PRESIDENT, CONSTRUCTION &
DEMOLITION DISPOSAL, INC.

DATE  9/23/94

WITNESS  Raymond B. Phillips

WITNESS  Kent C. Ellsworth

WITNESS  Victoria L. Troup

WITNESS  Pamela M. Sam

W. Wm. Ellsworth, III

PRESIDENT, SOIL RESOURCES, INC.

DATE  9/23/94

Joseph J. DeLegge

BARTOW CITY MANAGER

DATE  9/21/94



WITNESS Renee N. Nichols

WITNESS Elizabeth C. Hunt

BARTOW CITY ATTORNEY

DATE  9-21-94

<div style="text-align: right">POLK OFF.REC. PAGE 3472  1965</div>

COUNTY OF POLK
STATE OF FLORIDA

  I HEREBY CERTIFY that the foregoing instrument was acknowledged before me by J. Michael Ellsworth and W. Wm. Ellsworth, III, each of whom is personally known to me and each of whom did not take an oath.

  WITNESS my hand and official seal in the County and State last aforesaid this 23rd day of September, 1994.

KELLEY J. FOWLER
Notary Public, State of Florida
My comm. expires Feb. 20, 1996
Comm. No. CC 181954

KELLEY J. FOWLER
Notary Public

0

ORIGINAL
DUPLICATE

ORIGINAL

EXHIBIT A

LEGAL DESCRIPTION

A parcel of land lying in Section 25, Township 29 South, Range 24 East, Polk County, Florida, more particularly described as follows:

The North 1/2 of the Northwest 1/4 of the Southwest 1/4 less the South 420 feet of the East 660 feet thereof.

AND

A parcel of land lying in Section 26, Township 29 South, Range 24 East, Polk County, Florida, more particularly described as follows:

The South 1/4 of the Northeast 1/4; AND the Southeast 1/4; AND the East 1/2 of the Northeast 1/4 of the Southwest 1/4.

AND

A parcel of land lying in Section 35, Township 29 South, Range 24 East, Polk County, Florida, more particularly described as follows:

The East 1/2 less the North 341.125 feet of the East 210 feet thereof; And the North 1/2 of the Southeast 1/4 of the Northwest 1/4; And the Northwest 1/4 of the Southwest 1/4; And the South 1/2 of the Southwest 1/4;

AND

A parcel of land lying in Section 36, Township 29 South, Range 24 East, Polk County Florida, more particularly described as follows:

The West 1/4 of Section 36, LESS AND EXCEPT the North 341.125 feet AND LESS AND EXCEPT the South 1/2 of the West 1/4 of Section 36 that lies in the plat of Florida Village (Highland Lakes Estates), as recorded in Plat Book 61, Page 7, public records of Polk County, Florida.

POLK OFF.REC.   PAGE   3472   1966

ORIGINAL

ORIGINAL

EXHIBIT "B"

Those properties depicted, designated and described as "LAKE" and "PARK" as is shown on the Plat of Highland Lakes Estates, Florida Village, Plat Book 61, Page 7, Public Records of Polk County, Florida which property lies Northerly and Southerly from Boardman Road South and Westerly and Northerly from Eleanor Boulevard; said property being adjacent to Blocks 2, 3, 4, 6, and 8 and lots contained therein, as shown on the Plat of Highland Lakes Estates, Florida Village; said properties being further identified Polk County Tax Collector Parcel Numbers 162924-292200-009130 and 162924-292200-009120.

POLK OFF.REC. PAGE 3472 1967

ORIGINAL

EXHIBIT C



## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

CONSTRUCTION & DEMOLITION
DISPOSAL, INC., a Florida
corporation, and SOIL RESOURCES,
INC., a Florida corporation,

Plaintiffs,

vs.

Case No.: 92-1016-CIV-T-25A

CITY OF BARTOW, FLORIDA, a
Florida municipal corporation,

Defendant.

_____/

### FINAL CONSENT JUDGMENT

The Plaintiffs have brought an action against the Defendant claiming violations of 42 U.S.C. § 1983, the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Article I, § 10 of the United States Constitution, violations of §§ 163.3194, 166.041(3)(c), and 403.7063, Fla. Stats., and for common law breach of contract and estoppel. The parties desire to avoid further litigation and have reached an agreement which is memorialized in the Settlement Agreement incorporated in the Final Consent Judgment. Defendant City of Bartow ("City") does not admit any liability or wrongdoing or legal defect in any existing City ordinance or regulation purporting to regulate land development and use within the City limits. Plaintiffs do not admit that the uses of their property set forth in the Settlement Agreement were not vested prior to curtailment or prohibition of such uses through statutory or regulatory enactments of the City. Accordingly, the Final Consent Judgment shall not constitute an admission by either party. This Final Consent Judgment is promulgated on the basis of the Settlement Agreement between the parties and their joint motion for issuance of this judgment; and constitutes a final judgment binding on all parties to the action.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, THAT:

1.    The Settlement Agreement which is attached hereto and incorporated and made a part hereof, is accepted and approved by the parties and the Court as a full and equitable resolution of this lawsuit;

2.    Plaintiffs' operations and uses, as described in the Settlement Agreement, were ongoing or contemplated prior to the July 20, 1992, enactment of Ordinance No. 1593-A, the

Landfill Ban Ordinance, and the December 6, 1993, enactment of the City's Unified Land Development Code.

3.     Plaintiffs property rights as described in the Settlement Agreement are not otherwise limited and are protected by this Consent Judgment. Except for the property and uses which are subject to the Settlement Agreement, the Consent Judgment does not adjudicate any issue which does or may pertain to the application of any City Land Development Regulations to any other property or uses not subject to the Settlement Agreement. To the extent this Order and incorporated Settlement Agreement conflicts with any City Land Development Regulations, then this Order and Settlement Agreement will control. This order and incorporated Settlement Agreement supersedes any City statutes, ordinances or land development regulations which conflicts with or is in derogation of the provisions herein.

4.     No further statutory or regulatory enactment is required by the City to effectuate the Settlement Agreement; and

5.     All parties shall bear their own attorneys' fees and costs.

6.     This Court shall retain jurisdiction over this matter for the purpose of enforcement of this Order and incorporated Settlement Agreement.

_____
United States District Court Judge

Entered this 29th day of April 1994.

Approved:

_____
Counsel for Plaintiffs

_____
Counsel for Defendants

I certify the foregoing to be a true and correct copy of the original.
DAVID L. EDWARDS, Clerk
United States District Court
Middle District of Florida
by: _____
Deputy Clerk